LEONARDA DI MARTINO AND GIOVANNI DI MARTINO, PLAINTIFFS, v. EVELYN VENTRELLA AND ERNEST VENTRELLA, AND VITTORIO DI MARTINO, DEFENDANTS.

Superior Court of New Jersey
Law Division

Argued February 9, 1973—Decided February 15, 1973.

*Mr. David A. Waks* argued the cause for plaintiffs (*Messrs. Isadore & David A. Waks,* attorneys).

*Mr. Victor K. Brown* argued the cause for defendants Evelyn Ventrella and Ernest Ventrella (*Messrs. Gorrin, Connors & Ironson,* attorneys).

*Mr. Joseph R. Raziano* argued the cause for defendant Vittorio Di Martino (*Messrs. De Yoe, De Yoe & Guiney,* attorneys).

Doan, J. C. C., Temporarily Assigned. This is an application under *R.* 4:50–1 (f) to vacate this court's Order of September 29, 1971, which granted summary judgment dismissing all claims and cross-claims against Vittorio Di Martino on the ground of his immunity to a suit by his parents. Plaintiffs seek to have Vittorio Di Martino reinstated as a party defendant.

A recital of the historical factual situation in this case would appear to be indicated.

On May 15, 1970, Vittorio Di Martino was driving a car owned by his father, Giovanni Di Martino, in which plaintiff Leonarda Di Martino, his mother, was a passenger. It collided with an automobile which was being driven by the defendant Evelyn Ventrella. On August 13, 1970, Vittorio's parents commenced a negligence action against Ventrella to recover for his mother's personal injuries and for his father's per quod and property damages. Ventrella's answer denied negligence, counterclaimed against Giovanni for

contribution, and asserted a third-party claim against Vittorio for contribution under the Joint Tortfeasors Contribution Act (*N. J. S. A.* 2A:53A). On May 17, 1971, leave of court was granted to permit the plaintiffs to amend their complaint to add Vittorio Di Martino as a direct party defendant.

On September 29, 1971, this court granted defendant Vittorio Di Martino's motion to dismiss all claims against him by reason of the doctrine of parental immunity. The action taken was based upon the decision in *Schwartz v. U. S. Rubber Corp.*, 112 *N. J. Super.* 595 (Law Div. 1971), affirmed 118 *N. J. Super.* 128 (App. Div. 1972), *cert. den.* 60 *N. J.* 470 (1972). That case held that the abrogation of parent-child immunity, as declared in *France v. A. P. A. Transport Corp.*, 56 *N. J.* 500 (1970), applied only to accidents occurring after July 10, 1970, the effective date established by the Supreme Court in *Darrow v. Hanover Township,* 58 *N. J.* 410, 420 (1971) for the abolition of interspousal immunity, as decided in *Immer v. Risko,* 56 *N. J.* 482 (1970). Since this accident occurred on May 15, 1970, the plaintiffs' claims against their son were held to be precluded by the July 10, 1970 cut-off date.

On the present motion, plaintiffs argue that the cut-off date does not conclusively preclude a parent-child claim because where there is no justified reliance upon immunity and where the accident has been fully and timely investigated, then there is no reason for any immunity. Plaintiffs claim that since the father Giovanni was the principal insured and since his insurance carrier investigated the accident and settled an independent claim with the Ventrellas, there was no reliance nor would any party be prejudiced. Plaintiffs rely wholly on the case of *Gotsch v. Gotsch,* 121 *N. J. Super.* 479 (Cumberland Cty. Ct. 1971), affirmed 121 *N. J. Super.* 454 (App. Div. 1972). That case held that an interspousal claim resulting from an accident before the cut-off date can be maintained where the accident had been fully investigated and there was no reliance on the immunity doctrine.

In opposition, Vittorio Di Martino argues that the *Gotsch* case is inapposite because that case involved an antenuptial accident, in which event an insurer would have good cause to promptly and assiduously investigate claims involving separate, unrelated individuals. In the parent-child situation, there is no comparable urgency.

The disposition of this motion depends upon the resolution of two subsidiary issues: (1) whether the abrogation of parental immunity encompassed a suit by an injured parent against an allegedly negligent child; and (2) whether the established cut-off date completely precludes such a suit. The answer to the first inquiry is in the negative and to the second inquiry, in the affirmative.

## I.

The abolition of parent-child immunity is not as extensive as the abolition of interspousal immunity. In *Immer v. Risko, supra,* the Supreme Court limited the scope of its decision to interspousal "claims arising out of motor vehicle accidents" (56 *N. J.* at p. 495). In contrast, the holding in *France v. A. P. A. Transport Corp., supra,* was specifically much more limited in scope:

"Our decision today goes no further than allowing suits between unemancipated children and their parents for injuries suffered as a result of the negligent operation of a motor vehicle. See dissenting opinion of Justice Jacobs in *Hastings v. Hastings, supra,* 33 *N. J.* [247], at 261." (56 *N. J.* at p. 507)

In *Hastings v. Hastings,* 33 *N. J.* 247 (1960), the Supreme Court was especially aware of the implications of the suggested abrogation of the parent-child immunity:

"* * * It should not be overlooked that the principle plaintiff asks us to establish would be applicable to injuries suffered in the home as well as in the family car and that an injured parent would also have to be permitted to sue his child for the latter's negligence." (at p. 251)

In this context, the dissenting opinion of Justice Jacobs, referred to in *France,* reveals a specific limitation on the scope of the abrogation of parent-child immunity:

"All this court is now called upon to hold is that a father who carelessly and negligently injures his passenger child while driving his fully insured automobile is not immune from a legal action on the child's behalf." (33 *N. J.* at p. 261)

By interpolating Justice Jacobs' comment with the limiting language in *France,* it becomes apparent that the parent-child immunity is abolished only as to claims by an injured unemancipated child against his tortfeasor parent for injuries suffered in a motor vehicle accident. This present case is not within the holding of *France,* since the plaintiff parents are attempting to sue their unemancipated son.

It may very well be that the Supreme Court will expand the scope of the parent-child immunity abolition beyond its present limitation. However, this court is bound by the decision of the Supreme Court:

"* * * as a trial court I am duty bound to follow the law as enunciated by courts of superior jurisdiction regardless of my views as to their correctness; and it is not within the area of discretion of a trial court to anticipate what an appellate court may do in the future in the light of an existing direct holding." *Fox v. Bd. of Ed. of W. Milford Tp.*, 93 *N. J. Super.* 544, 557 (Law Div. 1967).

Consequently, applying the law as enunciated by the Supreme Court, a suit by an injured parent against a tortfeasor child is barred by the doctrine of parent-child immunity.

## II.

Even assuming that the abolition of parent-child immunity is so extensive as to include the instant case, the July 10, 1970 effective date of immunity abolition would preclude this claim, if that cut-off date must be applied conclusively.

Except for the *Gotsch* case, the courts of this State have held that the cut-off date established in *Darrow* is conclusive on the issue of an interspousal or parent-child claim. In *Schwartz v. U. S. Rubber Corp.*, 118 *N. J. Super.* 128 (App. Div. 1972), the court held that the cut-off date established for interspousal claims applies equally to parent-child claims:

> "We conclude that *Darrow v. Hanover Township* . . . controls as is indicated by the June 8, 1971 order of the Supreme Court denying certification of the then pending appeal in this case." [60 *N. J.* 470 (1972)] (at p. 129)

Likewise, in *Berry v. Berry*, 120 *N. J. Super.* 452 (App. Div. 1972), which involved an interspousal claim, the court applied the cut-off date conclusively, even though it found no reliance upon the interspousal immunity doctrine:

> "Under these circumstances we conceive no basis for concluding that the insurance company relied upon the doctrine of interspousal immunity. The sequence of events dictate otherwise. However, while *Darrow* is factually distinguishable we, nevertheless, are obliged to apply the rule of law therein enunciated." (at p. 456)

In contrast, in *Gotsch v. Gotsch*, 121 *N. J. Super.* 479 (Cumberland Cty. Ct. 1971), which involved an interspousal claim, the trial court held that a claim arising from an accident which occurred before the cut-off date can be maintained if there was no justified reliance upon immunity by the insurance carrier:

> "Since justifiable reliance is the basic rationale of *Darrow* and no prejudicial reliance is shown by defendant's carrier, the reason for immunity are absent and the cause of action should be recognized and enforced. *Long v. Landy, supra* [35 *N. J.* 44]. Moreover, the additional purpose of declaring prospectivity only to the *Immer* rule, that of fostering stability and avoiding the necessity of opening claims which might have gone stale because of a failure to promptly investigate, is not present in the case before the court." (at p. 486)

On appeal, the Appellate Division expressly affirmed the trial court's rationale. 121 *N. J. Super.* 454, 456 (App. Div. (1972).

As indicated above, the underlying foundation of the trial court's rationale was its use of the analytic approach of *Long v. Landy,* 35 *N. J.* 44 (1961), which established that "when the reasons for immunity are absent, a cause of action should be recognized and enforced by our courts." *Gotsch v. Gotsch, supra,* 121 *N. J.* at 482. *Immer v. Risko, supra,* 56 *N. J.* at 487. However, the trial court greatly expanded the use of that analytic approach. In both *Long* and *Immer,* the analytic approach *related to the common law grounds of immunity,* i. e., marital unity, family harmony, collusion, and fraudulent claims. Contrastingly, the *Gotsch* court related the analytic approach not to the common law grounds of immunity, but to the reasoning justifying *prospective application of immunity abolition,* i. e., justified reliance in investigation, rate-making, and coverage. Accordingly, in our view the *Long* approach was contra-indicated. Justified reliance solely concerns the issue of prospective-retrospective application of a change of a common law doctrine but does not concern the actual change or continuance of the substantive doctrine itself. Whether or not an insurance carrier relied on the immunity is inconsequential on the issue of whether or not there should be immunity as a matter of substantive law.

Moreover, even if justified reliance was a factor affecting immunity, nevertheless the decision of *Darrow* makes the cut-off date absolute. The Supreme Court was quite specific in establishing the cut-off date:

"* * * we hold that *Immer* is prospective only . . . The *Immer* rule will be available only to persons suffering injuries in automobile accidents occurring after July 10, 1970, the date *Immer* was decided." (58 *N. J.* at p. 420)

This explicit holding and the general tenor of the *Darrow* decision indicate a deliberate and conscious mandate to limit

the availability of interspousal and parent-child claims, foreclosing consideration of claims or reliance in specific cases that antedate the respective decisions abrogating immunity.

### III

For the foregoing reasons, plaintiffs' motion to reinstate Vittorio Di Martino as a party defendant is denied.